The judgment of the court (Preston, J., not sitting in the cause, having been of counsel in the case,) was pronounced by
Slidell, J.
At an election held in 1849, in the parish of Jefferson, Borgsiede was returned as being duly elected recorder of the parish, and Clark, who had been a candidate for the office, instituted a proceeding under the act of 1846, to contest the election. This petition was signed by himself and by twenty citizens of the parish, as required by the statute. The petition made no charge against Borgstede of any malpractice touching the election, but alleged that the election was void by reason of the incapacity of the commissioners, and the irregular and illegal performance of their functions. The prayer of the petition was that Borgstede might be cited; that the matters alleged might be inquired into by a jury; that the petitioner, Clark, might be adjudged to be entitled to the office of Parish Recorder of Jefferson; or that the election for said office may be referred again to the people. To this Borgstede answered, denying the allegations of the petition, and maintaining the legality of his election. A jury having been empannelled and the cause heard, a majority brought in a verdict for the plaintiff, declaring the election for the office of Recorder for the Parish of Jefferson to be null, and referring the same back to the people. Upon this verdict the following judgment was rendered : “ In this case, the court considering the verdict of the jury, it is ordered, adjudged and decreed; that the election for parish recorder in and for the parish of Jefferson, be annulled, and that the same be referred-back to the people.”
Subsequently, without any other judicial action, a writ of fieri facias was obtained by Clark from the clerk of the court, and the sheriff was about to execute it upon the property of Borgstede when he brought the present suit to enjoin the execution. The writ is for $559 90, being composed of $225 20 for clerk’s fees, and $304 70 for sheriff’s fees, alleged to have been incurred in the proceeding above mentioned. It appears from the evidence in this cause, that these costs were mainly incurred for subpoenaing witnesses for both parties, but in what proportion is not shown.
*734 The district judge dissolved the injunction, and Borgstede has appealed. The question is whether the execution lawfully issued and can be lawfully enforced upon the property of Borgstede.
It will be observed, that the judgment in the matter of the contested election did not adjudge any liability on the part of Borgstede for the costs. It simply annulled the election, and referred it back to the people. But it is said that this case is controlled by the provisions of the Code of Practice, and we are referred to the articles 549 and 551. These articles are as follows : “ In every case the costs shall be paid by the party cast, except where compensation has been allowed, or real tenders made, as heretofore provided by this code.” Art. 549. “If the court have not decreed in their judgment that the party cast should pay the costs, the same are nevertheless duo to the party in whose favor the judgment had been given ; and such party shall be entitled to have the same taxed on execution of the judgment.” Art. 551.
So far as the code establishes the principle, that in ordinary actions the costs ought to be paid by the defeated litigant, it harmonizes with every system of law with which we are acquainted. Victus victori in expensis comdemnandus est, is the maxim alike of the civil and the English law. But our code goes further than the civil'or English law in declaring that costs are due and may be collected on execution, even although the decree is silent with regard to them. Those systems both contemplate an express condemnation to pay costs. See Domat, book 4, tit. 7, sec. 4. Blackstone, book 3, chap. 24. And, under the Roman law, the judge could in his discretion moderate the extent to which costs should be borne by the party cast if he had acted in good faith, and in ignoronce of the rights of his antagonist. We mention this peculiarity of our code, not with any view of weakening its effect in those cases to which it is applicable, but for the purpose of showing the propriety of confining its operation to such cases.
Now, we understand the code as laying down rules of practice in civil notions “brought,” as its own definition expresses it, “for private interests.” L’action civile est cede qui s’intente pour un interét privé. Art. 9. It is proper, therefore, to inquire whether the proceeding authorized by the statute of 1846, can be considered as purely a civil action within the contemplation of the code, or whether it is not on the contrary a proceeding, to some extent at least, of public concern, and not to be inflexibly controlled by those rules which govern controversies purely individual.
The proceeding under the statute does not rest upon the same basis as a civil action. A right of civil action is the right given to every person to claim judicially what is due or belongs to him Code, 1. But in this proceeding the party is not permitted to act without the concurrence of twenty of his fellow-citizens. Again, in actions between man and man, (the civil action contemplated by the code) a right of appeal is guaranteed by the Constitution when the matter in dispute exceeds a certain sum. But in this proceeding no appeal is permitted, no matter what may be the pecuniary value of the office. In the case of Be Buys, the constitutionality of this provision of the statute was debated. We sustained its constitutionality, and refused to entertain an appeal, because we considered the contest a matter of public concernment, and not a lawsuit between individuals.
Again, it cannot fairly be supposed to have been the intention of the Legislature to discourage citizens from presenting themselves as candidates for public office. Yet such would be the effect, if a citizen who had received the suffrages of the people could be subjected, at the will of a defeated candidate acting in *735 conjunction with a few other persons, to the costs of an expensive controversy, not for any fault or wrong on his part, but on account of the mistakes or incapacity of commissioners of election.
For these and other reasons which will suggest themselves from a consideration of the terms of statute, and the motives which induced its enactment, we conclude that the case ought not to be controlled by the 551st article of the Code of Practice. The execution has no judicial basis, and is therefore void.
It is therefore decreed, that the judgment of the district court be reversed ; and it is further decreed, that the injunction be perpetuated; the costs in both courts to be paid by the defendants.